**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

| | |
|---|---|
| IVERY HICKS,               ) | |
|                      ) | |
|        Plaintiff         ) | |
|                      ) | |
| v.                        ) | Case No. 8:12-cv-03292-WGC |
|                      ) | |
| FRIEDMAN & MACFADYEN, P.A.,   ) | |
| *et al.*,                    ) | |
|                      ) | |
|        Defendants.      ) | |
| _____ ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE FIRST AMENDED CLASS COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................1

STANDARD FOR A MOTION TO DISMISS...........................................................2

SUMMARY OF RELEVANT FACTS AND PROCEDURAL HISTORY ..................................5

    The Loan and the Deed of Trust ......................................................................5

    Plaintiff's Default on the Debt and Defendants' Initial Communications to Plaintiff
      (in late 2009 and early 2010) ......................................................................6

    The Foreclosure Proceedings (Beginning in January 2010)...............................7

    Plaintiff's Notice of Appeal to the Maryland Court of Special Appeals (in April 2012).......... 9

ARGUMENT...............................................................................................................10

    I.    *Res Judicata* Bars Plaintiff's Claims and The Underlying Foreclosure Is Not
         Subject to Collateral Attack. .................................................................10

        A.  *Res Judicata* Precludes All Plaintiff's Claims .......................................10

        B.  The Foreclosure Proceedings Underlying Plaintiff's Claims Are Not
            Subject to Collateral Attack.................................................................13

    II.   The Amended Complaint Must Be Dismissed Under Rule 12(b)(1) Because
         Without Damages, There is No Justiciable Case or Controversy. ..................16

    III.  Plaintiff Fails to State a Claim for Violation of the FDCPA (Counts I
         Through VIII) As Those Claims Are Time-Barred......................................18

    IV.  The Amended Complaint Fails To State A Claim Under The MCDCA
         (Count VIII)......................................................................................21

    V.   Plaintiff Fails to State a Claim for Deceit (Count IX)...................................26

CONCLUSION............................................................................................................30

# EXHIBIT INDEX

Exhibit A, Adjustable Rate Note, dated November 14, 2005, 5 Pages

Exhibit B, Deed of Trust, dated November 14, 2005, 24 pages

Exhibit C, Notice of Intent to Foreclose, dated 1/8/2010, 2 pages

Exhibit D, Order Granting Motion for J. Awarding Possession, dated April 6, 2012,
   1 page

Exhibit E, Deed of Removal & Appm't of Successor Trustees, dated June 15, 2010
   2 pages

Exhibit F, Order to Docket Suit and Aff. Pursuant to Md. R. 14-207(b), dated June 30,
   2010, 1 page

Exhibit G, Aff. Of Service, dated July 6, 2010, 1 page

Exhibit H, The Circuit Court Docket, 5 pages

Exhibit I, Opposition to Motion For Judgment Awarding Possession, with Exhibits A – D
   attached, dated February 21, 2012, 29 pages

Exhibit J, Order Granting Motion for Judgment Awarding Possession of The Property
   to Fannie Mae, dated April 6, 2012, 1 page

Exhibit K, Notice of Appeal, dated April 18, 2012, 2 pages

Exhibit L, Mandate, Dated December 11, 2012, 3 pages

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendants move to dismiss the First Amended Class Complaint (the "Amended Complaint" or "Am. Compl."), and in support state as follows:

## INTRODUCTION

The Amended Complaint is a mere pretext for Plaintiff Ivery Hicks' ("Plaintiff") attempted end-run around the well-settled judicial doctrine of *res judicata*.  In essence, the Amended Complaint asks the District Court to overturn a foreclosure and property sale that was ratified by the Circuit Court for Prince George's County, and subsequently appealed by Plaintiff to the Maryland Court of Special Appeals,[1] before Plaintiff *voluntarily* dismissed her appeal.  Indeed, the Amended Complaint makes many of the same arguments that Plaintiff raised in state court, which the state court unequivocally rejected by awarding possession to Fannie Mae.  (*Compare* Am. Compl. ¶¶ 105, 106, 150, 157 *with* Opp. to Motion for J. Awarding Possession at 2-3.)

The Amended Complaint alleges that Defendants Friedman & MacFadyen, P.A., Miriam S. Fuchs, Jeffrey Huston, James J. Loftus, Kenneth J. MacFadyen, and Daniel Menchel (collectively, "Defendants") made a series of false statements and representations while attempting to collect a debt and managing the foreclosure process in which Plaintiff forfeited the property securing her defaulted debt obligation.  (*See* Am. Compl. ¶ 2.)  The alleged misrepresentations give rise to Plaintiff's claim that Defendants violated provisions of the Fair Debt Collection Practices Act ("FDCPA") and the Maryland Consumer Debt Collection Act ("MCDCA"), and that Defendants are liable for common law deceit. Plaintiff does not deny, however, that:  she owed a valid debt secured by a Note and a Deed of Trust; she

---

[1]     To be clear, Plaintiff did not, in fact, appeal the state court's ratification of the foreclosure and sale.  Plaintiff appealed the state court's judgment awarding possession to the purchaser of the collateral.

was in default under the terms of the Note; or that her default subjected her to forfeiture of her property. (*See id.* ¶¶ 102-03.)[2]

In the state foreclosure action, Plaintiff had a full and fair opportunity to object to the foreclosure procedures giving rise to the allegations in the Amended Complaint, and the Complaint does not—indeed, it could not—deny the validity of the state court judgment. This Court may take judicial notice of the fact that the Circuit Court for Prince George's County considered the evidence before it in the state foreclosure action, in a case styled *MacFadyen v. Hicks*, No. CAE10-20849, filed June 30, 2010, and ratified by the court in an Order of Ratification of Sale, entered January 26, 2011. Thus, all causes of action alleged in the Amended Complaint are barred by the doctrine of *res judicata*.

Even if Plaintiff's claims are not barred by *res judicata*, the FDCPA claims are barred by the statute of limitations. Furthermore, Plaintiff's allegations are insufficient as a matter of law to establish any claim that Defendants violated the MCDCA, or that Defendants are liable for deceit. For all of the foregoing reasons, the Amended Complaint should be dismissed in its entirety, with prejudice.

## STANDARD FOR A MOTION TO DISMISS

A motion to dismiss tests the legal sufficiency of a complaint. *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). The Court must accept all factual allegations in the Amended Complaint as true, construe the Amended Complaint in the light most favorable to Plaintiff, and recognize that "dismissal is inappropriate unless it appears to a certainty that the plaintiff would be entitled to no relief

---

[2]     The Amended Complaint is filled with extraneous rhetoric irrelevant to the legal issues on this Motion to Dismiss. As the Fourth Circuit recently observed, "[plaintiff's] briefs are filled with allegations of fraud in the mortgage industry and discussions of the financial crisis that has plagued the country of late. But these seem interposed mainly to distract attention from what in reality is a straightforward commercial case." *Horvath v. Bank of N.Y.*, 2011 U.S. App. LEXIS 10152 at *24 (4th Cir. Va. May 19, 2011).

under any state of facts which could be proved in support of his claim." *See Baird v. Rose*, 192 F.3d 462, 467 (4th Cir. 1999) (internal quotations omitted).

The United States Supreme Court set forth the standard of review for Rule 12(b)(6) motions in *Bell Atlantic Corp. v. Twombly*. The *Twombly* Court explained that a plaintiff's obligation is to provide the grounds upon which he or she relies for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff must provide more than conclusions "and a formulaic recitation of the elements of a cause of action." *Id.* Justice Souter's majority opinion noted that "[f]actual allegations must be enough to raise a right to relief above the speculative level…." *Id.* (internal citations omitted).

In *Ashcroft v. Iqbal* the Supreme Court elaborated on the pleading standards set forth in *Twombly* by explaining that to survive a motion to dismiss, a complaint must allege facts sufficient to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). Justice Kennedy's majority opinion stated that "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Merely reciting the elements of a cause of action and supporting the recitation with conclusory statements will not suffice. *Id.* A complaint must assert a plausible claim for relief in order to survive a motion to dismiss. *Id.* at 679.

In considering a motion to dismiss, the Court need not accept unsupported legal allegations, legal conclusions couched as factual allegations, or conclusory factual allegations devoid of any reference to actual events. *See Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). *See also Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009). The Court may consider facts outside the contents of a complaint on a motion to dismiss without converting the motion to one for summary judgment, in certain instances. *See Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484

F.3d 700, 705 (4th Cir. 2007) ("[R]eviewing the dismissal of a complaint under Rule 12(b)(6), we may properly take judicial notice of matters of public record.") (citing *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004)).   A district court may consider documents attached to the complaint, as well as those attached to the motion to dismiss, provided that they are integral to the complaint and authentic.  *See Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006) (holding that the court may consider evidence attached to a motion to dismiss even at the Rule 12(b)(6) stage, if the evidence is (1) clearly integral to, and was relied upon in the complaint; and (2) the plaintiff does not dispute its authenticity). The Court may also properly take judicial notice of matters of public record.  *Hall v. Virginia*, 385 F.3d 421, 424, n.3 (4th Cir. 2004) (citing *Papasan v. Allain*, 478 U.S. 265, 268 n.1 (1986)).

In federal cases involving both federal jurisdictional claims and pendent jurisdiction state law claims, when claims over which the court holds original jurisdiction are eliminated, the court should not exercise supplemental jurisdiction over the state claims.  *Flanagan v. Anne Arundel Cnty.*, 593 F. Supp. 2d 803, 812 (D. Md. 2009) ("Courts may decline to exercise supplemental jurisdiction over pendent state law claims if the court has dismissed all claims over which it has original jurisdiction.") (internal citations omitted).

> In fact, the U.S. Supreme Court has 'expressly cautioned' that '[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.  Certainly, if the federal law claims are dismissed before trial…the state claims should be dismissed as well.

*Id.* (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).   While a federal court may dismiss the state claims without prejudice, when the state claims are clearly without merit, the court should dispose of them in the interest of judicial economy and to avoid the futility of meritless state court litigation.  *Thomas v. Lamanque*, 986 F. Supp. 336, 338 (W.D. Va. 1997) (holding that if an

4

interpretation of state law that defeats the plaintiff's state claim is obviously correct, the federal judge "should put the plaintiff out of his misery then and there, rather than burdening the state courts with a frivolous case").[3]

## SUMMARY OF RELEVANT FACTS AND PROCEDURAL HISTORY

### The Loan and the Deed of Trust.

1.      On November 14, 2005 Plaintiff obtained a $189,400.00 loan from JPMorgan Chase Bank, N.A. ("Chase Bank") to purchase real estate at 16111 Parklawn Place, Bowie, Maryland (the "Property").  (Am. Compl. ¶ 102.)

2.      In exchange, Plaintiff provided Chase Bank with an Adjustable Rate Note (the "Note") (Exhibit A) and a Deed of Trust (Exhibit B).  (Adj. Rate Note (Nov. 14, 2005) *and* Am. Compl. ¶ 102.)

3.      The Prince George's County Circuit Court clerk's office recorded the Deed of Trust in Book 23965 Page 411.  (Deed of Trust (Nov. 14, 2005) *and see* Am Class Compl. ¶ 103.)

4.      The Deed of Trust required notice to Plaintiff in the event of a change in loan servicer, not in the event of a change in the Note purchaser.  (*See* Deed of Trust ¶ 20 *and see* Am Class Compl. ¶ 146.)

5.      The Note explicitly states that Chase Bank may transfer the Note, and the transferee is entitled to exercise all rights under the Note as Note holder.  (Adj. Rate Note ¶ 1 ("I understand that Lender may transfer this Note.  Lender or ***anyone*** who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'") (emphasis added).)

---

[3]      *See also Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 203 (4th Cir. 1997) (court has "wide latitude" in how to address pendent state claims); *Sullivan v. Conway*, 157 F.3d 1092, 1095 (7th Cir. 1998) (holding that the federal court should not prolong "doomed litigation" by sending it back to the state court to be dismissed there); *Crumble v. New Directions Mortg. Co.*, 77 Fed. Appx. 665, 668

6.      Shortly after November 14, 2005 Chase Bank transferred the Note to the Federal National Mortgage Association ("Fannie Mae").  (*See* Am. Compl. ¶ 105.)

7.      A subsidiary of Chase Bank, Chase Home Finance LLC ("Chase Finance"), was the loan servicer throughout the term of Plaintiff's loan.  (*See* Am. Compl. ¶ 106.)

**Plaintiff's Default on the Debt and Defendants' Initial Communications to Plaintiff (in late 2009 and early 2010).**

8.      The Note obligated Plaintiff to make monthly payments of principal and interest until December 1, 2035, but she neglected to make payments after July 13, 2009.  (Notice of Intent to Foreclose (Jan. 8, 2010) at 1 (Exhibit C) *and* Order Granting Motion for J. Awarding Possession (Apr. 6, 2012) (Exhibit D).)  (*See also* Am. Compl. ¶ 110 ("Plaintiff made her payments to Chase until she began to experience financial difficulty . . . .").)

9.      She was in default on August 1, 2009, and on January 8, 2010 Plaintiff was $10,122.41 in arrears.  (Notice of Intent to Foreclose at 1.)

10.     Chase Finance, as loan servicer, engaged Defendant Friedman & MacFadyen, P.A. (the "Firm") to address Plaintiff's default and to begin the foreclosure process, if necessary.  (*See* Am. Compl. ¶ 106, 65.)

11.     Defendants sent Plaintiff letters in an attempt to avoid foreclosure.  (*See, e.g.*, Am. Compl. Ex. B.)[4]

---

(4th Cir. 2003) (denying plaintiff request to voluntarily dismiss state claims that the district court had dismissed with prejudice).

[4]      These letters were accurate in every *material* respect, from correctly identifying the loan servicer acting on behalf of the Note holder, to identifying the mortgagor, the Property acting as security and subject to forfeiture, and the details of Plaintiff's default.

**The Foreclosure Proceedings (Beginning in January 2010).**

12.     Because Plaintiff did not cure her default, the loan servicer and Note holder had no choice but to enforce their rights under the Note.  Pursuant to Maryland Real Property Article § 7-105.1, on January 8, 2010, Defendants sent Plaintiff a Notice of Intent to Foreclose ("Notice"), which accurately stated the circumstances of Plaintiff's default.  The Notice correctly identified Plaintiff as the borrower, Chase Finance as the loan servicer, Fannie Mae as the secured party, and Chase Bank as the Maryland mortgage lender.  (Notice of Intent to Foreclose at 1, 3.)  The Notice identified the date of default and the amount owed, and explained how Plaintiff could avoid the sale of the Property.  (*Id.* at 1-2.)

13.     On June 15, 2010 Defendants filed a Deed of Removal and Appointment of Successor Trustees ("Deed of Removal") (Exhibit E).  (Deed of Removal & Appm't of Successor Trustees (June 15, 2010).)  The Deed of Removal accurately indicated that loan servicer Chase Finance was acting as Note holder in appointing Defendants as Substitute Trustees.  (*See* Deed of Removal & Appm't of Successor Trustees *and* Am. Compl. ¶ 106 ("Among its responsibilities as the servicer, Chase was responsible for…responding to any default by Plaintiff, including hiring and managing foreclosure counsel.").)

14.     On June 30, 2010 Defendants filed an Order to Docket Suit and Affidavit Pursuant to Maryland Rule 14-207(b), which attached the complete mortgage foreclosure file (Exhibit F).  (Order to Docket Suit & Aff. Pursuant to Md. R. 14-207(b) (June 30, 2010).)

15.     Plaintiff was served with the foreclosure documents and had full and fair notice of the foreclosure action taken against the Property (Exhibit G).[5]  (Aff. of Service (July 6, 2010).)

16.     After filing the foreclosure action, Defendants continued to attempt to work with Plaintiff to cure her default and avoid sale of the Property by sending her letters with information regarding alternatives to foreclosure.  (*See* Am. Compl. Exs. C-E.)

17.     When Defendants' efforts to avoid foreclosure failed, Defendant Miriam S. Fuchs, as Substitute Trustee, sold the Property to Chase Finance at 1:42 p.m. on September 1, 2010, for $211,500.00.  (Report of Sale (Sept. 28, 2010).)

18.     The Notice of Foreclosure Sale was made on October 7, 2010, informing the public that unless someone objected to the sale, the court would ratify and confirm the sale on November 8, 2010. (Notice of Foreclosure Sale (Oct. 7, 2010).)

19.     No one—including Plaintiff—objected to the sale or the foreclosure procedures, and Judge Thomas P. Smith of the Prince George's County Circuit Court entered an Order of Ratification of Sale on January 26, 2011, terminating the foreclosure proceedings.[6]  (Order of Ratification of Sale (Jan. 26, 2011).)

20.     On February 14, 2011 Chase Finance filed a Motion to Substitute Purchaser and Order, seeking to assign its rights to the Property, to Fannie Mae.  (Mot. to Substitute Purchaser & Order (Feb. 14, 2011).)

---

[5]     Ms. Hicks was personally served with: 1) Order to Docket Suit and Affidavit; 2) Deed of Trust; 3) Affidavit of Default and Notice of Intent to Foreclose; 4) Statement of Debt; 5) Affidavit Certifying Ownership of Debt Instrument; 6) Notice of Intent to Foreclose; 7) Consumer Notice Under § 7-105.1(D)(2)(vii); 8) Debt Instrument; 8) Deed of Appointment of Substitute Trustees; 9) Affidavit of Negating Military Service; and 10) Law Clerk Request Sheet.

[6]     The Circuit Court Docket is attached as Exhibit H.

21.     On March 15, 2011 Judge Smith entered an Order of Substitute Purchaser, ordering that "the Substitute Trustees are hereby authorized, after final ratification, to convey the property described in these proceedings unto the said Fannie Mae…."  (Order of Substitute Purchaser (Mar. 15, 2011).)  The Deed transferring title to Fannie Mae was filed in Book 32799 at Page 369 in the clerk's office for the Prince George's County Circuit Court.  (Deed (June 27, 2011).)

22.     Plaintiff filed an Opposition to Motion for Judgment Awarding Possession, in which she did not challenge the legitimacy of her debt, the fact that she was in default, or that her security for the mortgage was subject to forfeiture (Exhibit I).  (*See* Opp. to Motion for J. Awarding Possession at 3.)  She claimed that she had no notice of Chase Bank's transfer of interest to Fannie Mae, and that Defendants invalidly appointed themselves as Substitute Trustees, negating the foreclosure.[7]

23.     The foreclosure court rejected Plaintiff's arguments, and on April 6, 2012, Judge Toni E. Clarke entered an Order Granting Motion for Judgment Awarding Possession of the Property to Fannie Mae (Exhibit J).  (Order Granting Motion for J. Awarding Possession (Apr. 6, 2012).)

**Plaintiff's Notice of Appeal to the Maryland Court of Special Appeals (in April 2012).**

24.     On April 18, 2012 Plaintiff appealed to the Maryland Court of Special Appeals (Exhibit K).  (Notice of Appeal (Apr. 18, 2012).)  Plaintiff moved to Stay Enforcement Pending Appeal, but Plaintiff voluntarily dismissed her own appeal on December 3, 2012 (Exhibit L).  (Mandate, No. 00329, E10-20849 (Md. Ct. of Sp. App. Dec. 11, 2012).)

---

[7]     Specifically, in Plaintiff's opposition to Defendants' motion for judgment awarding possession she argued that the Substitute Trustees did not have standing to conduct the foreclosure sale. She supported her contention by arguing that the Deed of Removal was defective and could not confer foreclosure authority upon Defendants.  (Opp. to Motion for J. Awarding Possession at 2.)  She sought to invalidate the foreclosure due to the alleged defects.  (*Id.* at 2-3.)  This argument is the underpinning of all of Plaintiff's claims in the Amended Complaint.

25.     In the meantime, on September 16, 2011 Plaintiff filed this action in the Eastern District of Virginia, alleging violations of the FDCPA, breach of fiduciary duty, fraud, and civil conspiracy, rooted in the actions taken by Defendants in the foreclosure process that was ratified by the Maryland state court, and appealed by Plaintiff to the Maryland Court of Special Appeals.   On August 24, 2012 Defendants filed a Motion to Dismiss the Complaint or Transfer Venue,[8] and on November 2, 2012 Plaintiff joined Defendants in a Consent Motion to Transfer Venue.   On November 8, 2012 Magistrate Judge M. Hannah Lauck entered an order transferring venue to this Court.   Plaintiff filed the First Amended Class Complaint on February 26, 2013.

## ARGUMENT

The Court should dismiss all Plaintiff's claims because they are barred by the doctrine of *res judicata* and the statute of limitations.   Alternatively, even assuming for the sake of argument that this Court has jurisdiction to adjudicate Plaintiff's claims, the Amended Complaint does not adequately plead facts to make out a *prima facie* case under the MCDCA, or for common law deceit.   Thus, Plaintiff fails to state claims upon which relief may be granted and the Amended Complaint should be dismissed in its entirety, with prejudice.

**I.      *Res Judicata* Bars Plaintiff's Claims And The Underlying Foreclosure Is Not Subject to Collateral Attack.**

**A.      *Res Judicata* Precludes All Plaintiff's Claims.**

Plaintiff's claims must be dismissed because the facts giving rise to all causes of action in the Amended Complaint were previously litigated between these parties in state court.   Plaintiff had a full

---

[8]      The Eastern District of Virginia did not rule on Defendants' Motion to Dismiss the Complaint.

and fair opportunity to contest all issues with regard to the foreclosure in the state foreclosure action, which was ratified by the Circuit Court for Prince George's County.[9]  (Order of Ratification of Sale.)

Under Maryland law *res judicata* applies when: (1) the parties are the same as, or in privity with, the parties in the earlier lawsuit; (2) the current and former lawsuits share the same claim; and (3) there was a final judgment on the merits in the initial suit.  *See Anyanwutaku v. Fleet Mortg. Group, Inc.*, 85 F. Supp. 2d 566, 570-71, 572 (D. Md. 2000) (holding that Maryland courts have ruled that *res judicata* precludes suits where lender liability claims could have been asserted as counterclaims in a foreclosure proceeding).

**The Maryland Court of Special Appeals has unequivocally explained that "[t]he law is firmly established in Maryland that the final ratification of the sale of property in foreclosure is *res judicata* as to the validity of such sale…."**  *Manigan v. Burson*, 160 Md. App. 114, 120, 862 A.2d 1037, 1041 (Md. Ct. Spec. App. 2003) (emphasis added) (quoting *Ed Jacobsen, Jr., Inc. v. Barrick*, 252 Md. 507, 511, 250 A.2d 646, 648 (1969)).  *See also Green v. Ford Motor Credit Co.*, 152 Md. App. 32, 55-56, 828 A.2d, 821, 835 (2003) (holding that *res judicata* bars a second action "based on facts that could have constituted a defense or counterclaim to a prior proceeding if the successful prosecution of the second proceeding would nullify the initial judgment or would impair rights established in the initial action") (internal citation omitted).  This Court recently held that "[w]hen a state court finalizes a foreclosure after the 'plaintiff was given the opportunity to raise all objections to the foreclosure sale of [a] property' that adjudication is a final judgment on the merits."  *Capel v. Countrywide Home Loans, Inc.*, Nos. WDQ-09-2374 & WDQ-09-2439, 2010 U.S. Dist. LEXIS 9197, at *14 (D. Md. Feb. 3, 2010)

---

[9]     Plaintiff had an additional opportunity to challenge the foreclosure process on appeal. She noticed an appeal regarding the award of possession to the Maryland Court of Special Appeals but she voluntarily dismissed it, waiving her right to further challenge the foreclosure.

(internal citation omitted) (denying wrongful foreclosure claim under the doctrine of *res judicata* following state court ratification of sale).[10]   Furthermore, this Court has dismissed claims similar to Plaintiff's, when the claims arise out of a foreclosure that is subject to a Maryland Circuit Court's ratifying order:

> All the remaining counts are barred by the doctrine of *res judicata*.  Each of these counts relates to apparent violations of the foreclosure sale.  But, on March 14, 2008, the foreclosure sale was ratified by order of the Circuit Court for Prince George's County, Maryland, and Plaintiffs exceptions to the sale were thereafter overruled.  ***The state circuit court, not the present federal one, had the final say on all motions relating to***

---

[10]     The District Court in *Capel* explained:

Maryland uses the transaction test to determine when a claim is 'identical' for *res judicata*.  *Laurel Sand & Gravel*, 519 F.3d at 162.  Claims are part of the same cause of action when they arise from the same transaction or series of transactions.  *Id.*  To determine whether claims arise from the same transaction, courts consider 'whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit  conforms to the parties' expectations or business understanding or usage.'  Restatement (Second) of Judgments § 24(2) (1982).

The Foreclosure action…determined that the successor trustees had the right to foreclose on the property and ratified the sale of the property to Deutsche Bank.  Here, Capel's claims all center on alleged defects in contract formation—i.e. failure to make certain required disclosures—and arguments that the Defendants had no right to foreclose under the Deed of Trust.  **Because all these claims concern the same loan transaction and the parties' rights under the Deed of Trust, they are transactionally related and could have been raised in the foreclosure action….**

**When a state court finalizes a foreclosure after the 'plaintiff was given the opportunity to raise all objections to the foreclosure sale of [a] property,' that adjudication is a final judgment on the merits.**  *Anyanwutaku*, 85 F. Supp. 2d at 572.  Here, Capel had an opportunity to object to the Deed of Trust during the Foreclosure action, but the docket indicates that he did not object to the sale.  The Baltimore County Circuit Court ratified the foreclosure sale on April 24, 2009, and granted judgment for possession on July 24, 2009.  There has been a final judgment on the merits of the foreclosure under the Deed of Trust.

As all three elements of *res judicata* are present, the Baltimore County Circuit Court judgment in the foreclosure action has preclusive effect and bars litigation of the claims raised by Capel in this case.  The Defendants motions to dismiss will be granted.

*Capel*, 2010 U.S. Dist. LEXIS 9197, at *12-14 (internal footnotes omitted) (emphasis added).

*the foreclosure, whether or not Plaintiffs chose to raise specific issues in that proceeding.*

*Dickson v. Cohn, Goldberg & Deutsch Law Firm*, No. PJM 09-937, 2009 U.S. Dist. LEXIS 113726, at *6 (D. Md. Dec. 4, 2009) (emphasis added).  *See also Bachrach v. Wash. United Coop., Inc.*, 181 Md. 315, 321, 29 A.2d 822, 826 (1943) (holding that final ratification of a foreclosure sale is *res judicata* unless there exists extrinsic fraud or illegality).[11]

**B.     The Foreclosure Proceedings Underlying Plaintiff's Claims Are Not Subject to Collateral Attack.**

The Amended Complaint attempts to make a thinly veiled collateral attack on the state court's Order of Ratification of Sale and Order Granting Motion for Judgment Awarding Possession.  (*Cf.* Am. Compl. ¶¶ 1, 156 (acknowledging completion of the foreclosure process giving rise to the causes of action alleged in the Amended Complaint, but failing to explicitly acknowledge the fact that the Circuit Court entered an Order Ratification of Sale and Order Granting Motion for Judgment Awarding Possession).)  Despite that the Amended Complaint fails to cite to the Order Ratification of Sale, the

---

[11]     The Maryland Court of Appeals in *Bachrach* explained:
It is essential to the prompt administration of justice that the rule be inviolably observed that **no court shall set aside a foreclosure sale merely because of harmless errors or irregularities committed in connection with the exercise of the power of sale, or for any slight or frivolous reasons not affecting the substantial rights of the parties**.  Public policy requires that the ratification of a lawful judicial sale shall be final and conclusive, unless the purchaser was precluded by fraud from making seasonable objection to its ratification.  It requires substantial grounds to justify a court in setting aside a judicial sale when lawfully made, for otherwise the public would be loath to bid for property thus offered.  **So the law is firmly established in Maryland that the final ratification of the sale of property in foreclosure proceedings is *res judicata* as to the validity of such sale, except in case of fraud or illegality, and hence its regularity cannot be attacked in collateral proceedings**.

*Bachrach*, 181 Md. at 320, 29 A.2d at 825 (emphasis added).

inescapable truth of the matter is that all operative facts relevant to Plaintiff's claims in this matter arise

out of a foreclosure that was ratified by the state court.

A ratification Order cannot be collaterally attacked unless there is a showing of "fraud, mistake

or illegality." Md. R. 2-535(b). "To establish fraud under Rule 2-535(b), a movant must show extrinsic

fraud, not intrinsic fraud." *Jones v. Rosenberg*, 178 Md. App. 54, 72, 940 A.2d 1109, 1119 (2008).

> An enrolled decree will not be vacated even though obtained by the use of forged
> documents, perjured testimony, or any other frauds which are 'intrinsic' to the trial of the
> case itself.  Underlying this long settled rule is the principle that, once parties have had the
> opportunity to present before a court a matter for investigation and determination, and
> once the decision has been rendered and the litigants, if they so choose, have exhausted
> every means of reviewing it, the public policy of this State demands that there be an end to
> that litigation….  This policy favoring finality and conclusiveness can be outweighed only
> by a showing 'that…the prevailing party, by some extrinsic or collateral fraud, has
> prevented a fair submission of the controversy.'

*Manigan v*, 160 Md. App. at 120-21, 862 A.2d at 1041 (quoting *Billingsley v Lawson*, 43 Md. App. 713,

719, 406 A.2d at 951 (1979) (internal citation omitted)).  *See also Green*, 152 Md. App. at 49, 828 A.2d

at 831 ("Under Maryland law it is clear that making an intentionally false statement in a complaint

would not constitute extrinsic fraud and that proof of such fraud will not suffice to set aside an enrolled

judgment.").

In other words "[f]raud is extrinsic when it actually prevents an adversarial trial but is intrinsic

when it is employed during the course of the hearing which provides the forum for the truth to appear,

albeit, the truth was distorted by the complained of fraud." *Jones*, 178 Md. App at 73, 940 A.2d at 1119

(quoting *Manigan*, 160 Md. App. at 121, 862 A.2d at 1041).  Irregularity "has been consistently defined

as the doing or not doing of that, in the conduct of a suit at law, which, conformable to the practice of

the court, ought or ought not to be done." *Manigan,* 160 Md. App. at 121, 862 A.2d at 1041 (internal

quotations omitted).  Thus, "irregularity, in the contemplation of the Rule, usually means irregularity of

process or procedure…, and not an error, which in legal parlance generally connotes a departure from the truth or accuracy of which a defendant had notice and could have challenged." *Id.* (internal quotations omitted) (alterations in original).  To set aside an enrolled Order on the basis of "mistake," "the mistake must necessarily be confined to those instances where there is a jurisdictional mistake involved." *Bernstein v. Kapneck*, 46 Md. App. 231, 239, 417 A.2d 456, 460 (1980).  For instance, the typical mistake occurs when a judgment has been entered in the absence of valid service of process. *Leadroot v. Leadroot*, 147 Md. App. 672, 683-84, 810 A.2d 526, 533 (2002) (holding that the court lacked personal jurisdiction due to the absence of valid service of process).

The existence of fraud, mistake, or irregularity must be shown by "clear and convincing evidence." *Das v. Das*, 133 Md. App. 1, 17, 754 A.2d 441, 450 (2000).  *See also Weinreich v. Walker*, 236 Md. 290, 296, 203 A.2d 854, 856 (1964); *Bowen v. Rohnacher*, 15 Md. App. 280, 284, 290 A.2d 560, 563 (1972).  "Moreover, the party moving to set aside the enrolled judgment must establish that he or she 'act[ed] with ordinary diligence and in good faith upon a meritorious cause of action or defense.'" *Thacker v. Hale*, 146 Md. App. 203, 217, 806 A.2d 751, 759 (2002) (quoting *Platt v. Platt*, 302 Md. 9, 13, 485 A.2d 250 (1984)).

Comparing these standards to the facts pleaded in the Amended Complaint, Plaintiff already presented and argued her case to the Prince George's County Circuit Court in an effort to invalidate the subject foreclosure, and that court considered and rejected her requests for relief.  After losing in the Circuit Court, she appealed to the Maryland Court of Special Appeals.  The parties are identical to the prior action.  Plaintiff made many of the same arguments in the prior action that she makes in this action.  There was a final judgment on the merits in the prior action.  Despite having an opportunity to object to the foreclosure procedures implemented by Defendants and despite the Circuit Court's final

judgment against Plaintiff, each and every one of the Amended Complaint's claims are attempts to relitigate the issues tried and disposed of in the state Circuit Court.

As Plaintiff's own allegations clearly demonstrate, Plaintiff is attempting to challenge the validity of the foreclosure process and issues intrinsic to the foreclosure proceeding.   These allegations do not provide this Court with a basis to review the Maryland state court judgment.

## II. The Amended Complaint Must Be Dismissed Under Rule 12(b)(1) Because Without Damages, There Is No Justiciable Case or Controversy.

The United States Constitution limits federal court jurisdiction to resolution of actual cases and controversies.   U.S. Const., art. III, § 2.   Standing is a threshold matter with respect to subject matter jurisdiction.   *See Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 476 (1982) (explaining that "this Court has always required that a litigant have 'standing' to challenge the action sought to be adjudicated in the lawsuit" and that "[t]hose who do not possess Art. III standing may not litigate as suitors in the courts of the United States").   A party's standing may be challenged by means of a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.   *Dash v. FirstPlus Home Loan Trust 1996-2*, 248 F. Supp. 2d 489, 501 (M.D.N.C. 2003).   A plaintiff bears the initial burden of pleading sufficient facts to demonstrate that subject matter jurisdiction exists and that they have standing to bring this action.   *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

To have standing a plaintiff must have suffered a specific, actual injury, there must be a causal connection between the injury and the defendant's conduct, and it must be likely, rather than merely speculative, that the injury will be redressed by a favorable decision.   *Lujan*, 504 U.S. at 560-61; *Motor Coach Indus., Inc. v. Dole*, 725 F.2d 958, 963 (4th Cir. 1984) ("The focus of the constitutional inquiry

must always be the party's 'injury in fact'—whether he has suffered a sufficiently concrete injury to justify the invocation of the judiciary's remedial powers.").

In this case Plaintiff presents the Court with no justiciable case or controversy to decide.  The foreclosure was noticed, the foreclosure occurred, and it was fully and finally ratified by a Maryland state court after a hearing on all disputed issues.  (*See* Order of Ratification of Sale.)  All of the issues that are raised in this proceeding were either raised or could have been raised as part of that ratification procedure or through Plaintiff's appeal to the Maryland Court of Special Appeals (which she later voluntarily dismissed).  (*See* Mandate, No. 00329, E10-20849.)  As explained above, these issues are *res judicata* and cannot be relitigated here.  *See Capel*, 2010 U.S. Dist. LEXIS 9197, at *14 ("When a state court finalizes a foreclosure after the 'plaintiff was given the opportunity to raise all objections to the foreclosure sale of [a] property,' that adjudication is a final judgment on the merits."); *Dickson*, 2009 U.S. Dist. LEXIS 113726, at *6 ("All the remaining counts are barred by the doctrine of *res judicata*. Each of these counts relates to apparent violations of the foreclosure sale. But…the foreclosure sale was ratified by order of the Circuit Court for Prince George's County, Maryland, and Plaintiffs exceptions to the sale were thereafter overruled."); *Culp v. Countrywide Homes, Inc.*, No. 3:09-CV-77-RJC-DCK, 2009 U.S. Dist. LEXIS 72123, at *20 (W.D.N.C. 2009) ("Even if the Plaintiffs now assert their fraud claim against CHL in somewhat different terms or under different grounds, Plaintiffs are still attempting to challenge the validity of the same mortgage from the same Defendant based on allegations that could have been raised in the prior lawsuit.").

Ms. Hicks had not previously and does not now contest that the debt underlying the secured collateral was in default and due and owing in the amount stated.  There is no issue of any deficiency judgment or other monetary obligation of Plaintiff on account of the debt beyond the forfeiture of the

collateral specifically securing the debt.   In fact, Plaintiff can claim no damages whatsoever from forfeiting the specific collateral posted to secure the debt that was admittedly in default.   *Moore v. Commonwealth Trustees, LLC*, No. 3:09CV731, 2010 U.S. Dist. LEXIS 113724, at *10 (E.D. Va. Oct. 25, 2010) ("Foreclosing on property is not a debt collection activity.");   *Hulse v. Owen Federal Bank*, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002) ("Foreclosing on a trust deed is distinct from the collection of the obligation to pay money…. Payment of funds is not the object of the foreclosure action.   Rather, the lender is foreclosing its interest in the property.").

Plaintiff's objections with regard to the methods by which the foreclosure process was undertaken, the notices executed, the documents provided, or any other element of the foreclosure process constitute at the very most allegations of fraud or deception intrinsic to the state proceedings themselves and insufficient to prove she suffered any injury whatsoever.

Thus, there is no active case or controversy between these parties for this Court to adjudicate as to the foreclosure sale, and Plaintiff can assert no actual, concrete damages to support a justiciable claim, thus the Amended Complaint must be dismissed in its entirety, with prejudice.

### III.   Plaintiff Fails to State a Claim for Violation of the FDCPA (Counts I through VIII) As Those Claims Are Time-Barred.

The Court should dismiss as untimely Plaintiff's FDCPA claims.   Under the FDCPA, "[a]n action to enforce any liability created by this subchapter may be brought…within one year from the date on which the violation occurs."   15 U.S.C. § 1692k(d).   "Generally, the statute of limitations begins to run when a communication violating the FDCPA is sent."   *Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F. Supp. 2d 492, 501 (D. Md. 2004) (citing *Peoples v. Wendover Fundin*g, 179 F.R.D. 492, 499 (D. Md. 1998); *Mattson v. U.S. West Commc'ns, Inc.*, 967 F.2d 259, 261 (8th Cir. 1992) (stating that a cause of

action accrues under the FDCPA when creditor mails collection letter because that date was last opportunity creditor had to comply with the FDCPA)).  This Court recently held that under the FDCPA:

> [a]n action to enforce any liability…may be brought…within one year from the date on which the violation occurs.  Generally, the statute of limitations for a claim under the FDCPA begins to run when a communication violating the FDCPA is sent.

*Deabreu v. Novastar Home Mortg., Inc.*, No. DKC 11-3692, 2012 U.S. Dist. LEXIS 77126, *8 (D. Md. June 4, 2012) (internal quotations and citations omitted).  If a plaintiff does not commence an action under the FDCPA within one year after the alleged violation, the claim is time-barred.  *Id.* at *9 ("Plaintiffs did not commence the instance action until well over one year after the latest possible date that a violation under…[the FDCPA] could have occurred.  Thus, insofar as they may have intended to assert causes of action under…[the] FDCPA, such claims would have been time-barred.").

This Court also recently granted a motion to dismiss a claim for violations of the FDCPA because the claims were time-barred.  *Reid v. New Century Mortg. Corp.*, No. 8:12-cv-02083-AW, *10-11 (D. Md. Dec. 13, 2012).  The Court made it clear that not only does the FDCPA have a one-year statute of limitations, but also that **the limitations period "starts to run on the date of the first violation."**  *Id.* at 10 (emphasis added) (citing *Fontell v. Hassett*, 870 F. Supp. 2d 395 (D. Md. 2012)).  The Court explained that the notices of default complained of were dated October 2010 and March 2011, but the plaintiff did not file her complaint until July 2012.  *Id.*  Noting that the statute began to run in October 2010, the Court held that even if it "used March 2011 as the trigger date, Plaintiff's FDCPA claim would be untimely as she would have had to have asserted it by March 2012."  *See id.*

The facts giving rise to the allegations in this case occurred more than one year before Plaintiff initiated this matter (on September 16, ***2011***).  The first communication complained of is the December

29, *2009* letter from Defendant MacFadyen to Plaintiff.[12]  (Am. Compl. ¶¶ 123-126.)  The limitations

period under the FDCPA ran from that day through December 28, *2010*.  Thus, all of Plaintiff's FDCPA

claims are barred by the statute of limitations.

Even if the Court was to apply the limitations period to the *last* alleged FDCPA violation, that

allegation's limitations period expired on July 6, 2011, one year after Defendant MacFadyen sent

Plaintiff the second of two letters that day, which allegedly contained "false" claims for fees and costs,

failed to identify Fannie Mae as the current creditor, and concluded with a forged signature.  (Am.

Compl. ¶¶ 136-140.)  And even if the Court was to select the date of the *foreclosure sale* as the date

triggering the running of the limitations period—although the sale is clearly outside the scope of the

FDCPA and Plaintiff's claims of FDCPA violations—the limitations period would have ended on

August 31, 2011, and Plaintiff's claims would still be time barred.[13]

---

[12]      The Amended Complaint alleges that "[a]round the end of September 2010, Defendant Friedman began sending various correspondences to the Plaintiff in an attempt to collect the alleged debt...."  (Am. Compl. ¶ 121.)  This statement is simply untrue and is contradicted by one of the documents Plaintiff attaches to her Amended Complaint (*see* Exhibit B).  Indeed, two paragraphs later Plaintiff alleges that "[o]n or around December 29, *2009*, Defendant Friedman sent Plaintiff a letter regarding alternatives to foreclosure...."  (*Id.* ¶ 123 (emphasis added).)  Notably, Plaintiff also alleges that the *latest* she received *any* letter from Defendants was July 7, 2010.  (*Id.* ¶ 136.)

[13]      Plaintiff makes no specific allegation of any FDCPA violation with respect to anything that happened after the foreclosure sale in September 2010, *e.g.*, with respect to the Order of Ratification that occurred in January 2011.  Even if she had, though, the course of litigation is not a "continuing violation" of the FDCPA.  *Martin v. Sessoms & Rogers, P.A.*, No. 5:09-CV-480-D, 2010 U.S. Dist. LEXIS 82171, *8 (E.D.N.C. Aug. 12, 2010); *Parker v. Pressler & Pressler, LLP*, 650 F. Supp. 2d 326, 341 (D.N.J. 2009), and "new communications concerning an old claim do not start a new period of limitations." *Martin*, 2010 U.S. Dist. LEXIS 82171, at *8-9 (quoting *Nutter v. Messerli & Kramer, P.A.*, 500 F. Supp. 2d 1219, 1223 (D. Minn. 2007)); *Campos v. Brooksbank*, 120 F. Supp. 2d 1271, 1274 (D.N.M. 2000).

And, any FDCPA claims about the underlying foreclosure proceedings in this case are, at best, non-material and thus non-actionable.  *See Stewart v. Bierman*, 859 F. Supp. 2d 754, 763-65 (D. Md. 2011) (granting motion to dismiss FDCPA claims) ("This Court is persuaded that the Fourth Circuit's citations of *Hahn, Donohue*, and *Miller* leads to the conclusion that in order to overcome a motion to dismiss a FDCPA claim that involves a false representation, a complaint "must contain sufficient factual

Plaintiff cannot bring claims for FDCPA violations arising prior to September 16, 2010. Even under the most generous view possible, Plaintiff could not bring claims for FDCPA violations after August 31, 2011. Therefore, Plaintiff may not recover for FDCPA claims alleged in her Amended Complaint filed after the statutory period expired, and the FDCPA claims should be dismissed with prejudice.

## IV.   The Amended Complaint Fails To State A Claim Under The MCDCA (Count VIII).

Plaintiff alleges – in conclusory fashion -- that Defendants enforced a right with the knowledge that the right did not exist, in violation of § 14-202 under the MCDCA. (Am. Compl. ¶ 185.) There is nothing in the Amended Complaint that would permit the Court to infer that Defendants attempted to collect a debt that they knew they had no right to collect, or that Defendants doubted their right to collect at any time. In fact, Defendants' complete success in the state court action seizing the Property securing the defaulted debt belies the notion that they did not have the right to collect Plaintiff's debt that was in default.

In order to state a claim under the MCDCA, Plaintiff must allege that Defendants attempted to enforce a right that they knew did not exist. Md. Code, Com. Law, § 14-202(8). "Knowledge" is an essential element of a claim under the MCDCA. *Shah v. Collecto, Inc.*, No. DKC 2004-4059, 2005 U.S. Dist. LEXIS 19938, *32 (D. Md. Sept. 12, 2005) ("As indicated by the express terms of the specific statutory provisions…Plaintiff must prove some knowledge component with regard to [Defendant's] actions…."). *See also Spencer v. Hendersen-Webb, Inc.*, 81 F. Supp. 2d 582, 595 (D. Md. 1999) ("[T]he

---

matter, accepted as true," that the alleged false representations were material.") ("Even assuming that the trustees' signatures were not their own, the signatures concern undisputedly accurate information concerning mortgage debts owed by Plaintiffs. The signatures do not relate materially to the debt at issue, and Plaintiffs fail to assert how the allegedly fraudulent signatures on indisputably accurate court filings would mislead the least sophisticated consumer in any way.").

Maryland Act is not a strict liability statute.  It requires the plaintiff to demonstrate that the collector had 'knowledge' that the claims it asserted did not exist.").   Under the MCDCA "knowledge" is "actual knowledge or reckless disregard as to the falsity of the existence of the right."  *Allen v. Bank of Am. Corp.*, No. CCB-11-33, 2011 U.S. Dist. LEXIS 92383, *30 (D. Md. Aug. 18, 2011) (quoting *Spencer*, 81 F. Supp. 2d at 595) (internal quotations omitted).  To establish reckless disregard, a plaintiff must show that the defendant either made a statement with a "high degree of awareness" of its "probable falsity," or that defendant had "serious doubts" as to the truth of the statement.  *Id.* at *31.

In *Allen v. Bank of Am. Corp.* this Court dismissed plaintiffs' MCDCA claims, finding the plaintiffs failed to plead adequately that the defendants had knowledge under MCDCA § 14-202(8).  *Id.* at *31-32.  The Court explained that a plaintiff must demonstrate that the defendant acted with "actual knowledge or reckless disregard as to the falsity of the existence of the right."  *Id.* at *30 (citing *Spencer*, 81 F. Supp. 2d at 595) (emphasis added).  Alternatively, a plaintiff may demonstrate that a defendant made a statement with a "high degree of awareness of…probable falsity" or that the defendant actually entertained serious doubts as to the truth of the statement.  *Id.* at *31.  The *Allen* plaintiffs did neither.  *Id.*  The trustee knew only that the loan servicer viewed the plaintiffs in default for more than six months.  *Id.*  The trustee did not have access to any information other than the servicer's allegation of default and the plaintiff's protestations to the contrary.  *Id.* at 31-32.  The Court held that the trustee's reliance on the servicer's accounting could not be reckless disregard as to the falsity of the existence of a right.  *Id.*

Within just the last two months this Court reiterated that under the MCDCA, a plaintiff must prove that a defendant knew the underlying ***debt*** it was attempting to collect was invalid, not that the defendant knew that the ***procedures*** used in collecting that debt were defective.  *See Marchese v.*

22

*JPMorgan Chase Bank, N.A.*, No. GLR-12-1480, 2013 U.S. Dist. LEXIS 3349, *23-24 (D. Md. Jan. 8, 2013). In *Marchese v. JPMorgan Chase Bank*, the plaintiff brought an action against his mortgagor for violation of the MCDCA by claiming, attempting, or threatening to enforce a right that the defendant knew did not exist. *Id.* at *23. The Deed of Trust, however, permitted the defendant to foreclose upon the defaulted mortgage and the plaintiff did not deny that he was in default. *Id.* at *23-24. The court said that the defendant had every right to foreclose, and went on to explain:

> Although Mr. Marchese takes issue with the methods used by the Substitute Trustees on Chase's behalf, including alleged missing signatures and improper notarizations, the MCDCA only allows for recovery against creditors that attempt to collect debts when there is no right to do so. It does not, as Mr. Marchese contends, allow for recovery based on errors or disputes in the process or procedure of collecting legitimate, undisputed debts.

*Id.* at *24 (internal citation omitted).

In another case decided by this Court earlier this year, the plaintiff alleged that the defendant threatened to enforce a right to foreclose that it knew did not exist until it complied with federal and state law related to collection activities. *Piotrowski v. Wells Fargo Bank, N.A.*, No. DKC 11-3758, 2013 U.S. Dist. LEXIS 14438, *31 (D. Md. Jan. 22, 2013). In the unique circumstances of that case, the plaintiff had agreed to the terms of a Special Forbearance Agreement and submitted three months of payments in accord with the terms of the agreement. *Id.* at *33-34. However, the plaintiff admitted to being in default of his mortgage. *Id.* at *34. The Notice of Default received by the plaintiff accurately described the defendant's remedies under the Deed of Trust, and the existence of the Special Forbearance Agreement was not relevant to the MCDCA claim. *See id.* In dismissing the MCDCA claim with prejudice, this Court held that:

> [e]ven assuming that Wells Fargo violated the ECOA or its state analogue in connection with Mr. Piotrowski's loan modification requests, such violations would have no bearing on its contractual foreclosure rights. Accordingly, the complaint fails to state a claim

under the MCDCA in connection with the Notice of Default because Mr. Piotrowski cannot establish that Wells Fargo claimed, attempted, or threatened to enforce its right to foreclose with knowledge that the right did not exist.

*Id.* at 34-35.

In this case Plaintiff attempts to manipulate the MCDCA to serve her own ends. She presents bare accusations that Defendants "knew" rights were unenforceable by virtue of alleged deficiencies in the foreclosure documents or process. For example, Plaintiff makes the conclusory allegation that Defendants claimed, attempted to enforce, and threatened to enforce a right that did not exist. (Am. Class Compl. ¶ 185.) The closest Plaintiff comes to alleging facts in support of her MCDCA claim is a statement that Defendants "knew" the foreclosure documents were defective because they incorrectly named the note holder and the signatures were not made by the people the signatures purported to be, rendering the documents "null and void." (*See id.* ¶ 157.) This mischaracterizes the MCDCA's focus and limitations on liability. The MCDCA is concerned with efforts by creditors to collect debts where there is no underlying, substantive right to do so—it does not concern itself with cases involving errors or disputes in the process or procedure of collecting *legitimate* debts. *See e.g.*, *Kouabo v. Chevy Chase Bank, F.S.B.*, 336 F. Supp. 2d 471, 475 (D. Md. 2004) (holding that a bank is liable under MCDCA when it attempts to collect on a *nonexistent* debt because the alleged debtor was current with payments in accordance with a settlement agreement, because the bank had actual knowledge of the account's status); *Mateti v. Activus Fin., LLC*, No. DKC 2008-0540, 2009 U.S. Dist. LEXIS 71971, *34-35 (D. Md. Aug. 14, 2009) (holding that a debt collector is not liable under MCDCA when it attempts to collect using incorrect interest rate it mistakenly believed was correct based on the creditor's representations to the collector, because the collector lacked knowledge of the inaccuracy); *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 732 (D. Md. 2011) (holding that a debt collector is liable under

MCDCA when the debt collector did not have a right to collect any debt because it acted with reckless disregard for the licensing requirements for collecting debts within Maryland).  The issue regarding the *documents* associated with the foreclosures is wholly irrelevant to whether Defendants had the *right* to foreclose.[14]  *See Stewart v. Bierman*, 859 F. Supp. 2d 754, 769 (D. Md. 2011) (granting motion to dismiss MCDCA claims) ("The Orders to Docket were correct in every way except for the signatures that were affixed with the authority of the purported signer, but not in fact signed by the person whose name was affixed.  Plaintiffs fail to allege any facts that demonstrate that Defendants had knowledge that the right to initiate foreclosure proceedings did not exist.  In fact, Plaintiffs concede they were in default on their mortgage payments. . . .  Although Plaintiffs take issue with the method used by Defendants to attach signatures to foreclosure documents, *the MCDCA* allows for recovery against creditors that attempt to collect debts when there is no right to do so.  It *does not, as the Plaintiffs appear to contend, allow for recovery in errors or disputes in the process or procedure of collecting legitimate, undisputed debts.*") (emphasis added).

The right to collect the defaulted debt is not in dispute and is readily admitted by Plaintiff.  The right of the creditor to possession of the Property securing the defaulted debt is not in dispute and readily admitted by Plaintiff.  Furthermore, a court of competent jurisdiction determined that Defendants had the right to enforce the terms of the Note.  Plaintiff cannot claim that Defendants had actual knowledge of the *nonexistence* of a right that undeniably *existed*, nor can Plaintiff claim that Defendants could have had a high degree of awareness of the probable *falsity* of the exercise of *true* right.  Perhaps most importantly, and consistent with this Court's ruling in *Allen*, Defendants cannot "recklessly disregard"

---

[14]     Additionally, the MCDCA requires a showing of actual damages, which Plaintiff has failed to plead sufficiently.

the status of a right they enforced by relying on loan servicer Chase Finance's representations regarding

the Note holder's right to enforce the terms of a Note that was undisputedly in default. Additionally, this

Court's very recent decisions in *Marchese* and *Piotrowski* underscore that MCDCA liability cannot

extend to a defendant who forecloses upon a plaintiff who was admittedly in default on her loan

obligations, and Ms. Hicks does not contest the fact of her own default.

Therefore, Plaintiffs have failed to allege sufficiently a claim under the MCDCA, thus the

MCDCA claim should be dismissed with prejudice.

## V.     Plaintiff Fails to State a Claim for Deceit (Count IX).

Finally, Plaintiff does not adequately plead a cause of action for deceit under Maryland law. An

action for deceit in Maryland requires that Plaintiff allege and prove five essential elements.

> In order to recover damages in an action for fraud or deceit, a plaintiff must prove (1) that
> the defendant made a false representation to the plaintiff, (2) that its falsity was either
> known to the defendant or that the representation was made with reckless indifference as
> to its truth, (3) that the misrepresentation was made for the purpose of defrauding the
> plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on
> it, and (5) that the plaintiff suffered compensable injury resulting from the
> misrepresentation.

*Philip Morris, Inc. v. Angeletti*, 358 Md. 689, 752, 752 A.2d 200, 234 (2000). Plaintiff must establish

these elements by clear and convincing evidence. *VF Corp. v. Wrexham Aviation Corp.*, 350 Md. 693,

704, 715 A.2d 188, 193 (1998). Defendants must have had knowledge of the falsity of their

representations or exercised a reckless indifference to the truth of their representations. *Id.* "Negligence

or misjudgment, 'however gross,' does not satisfy the knowledge element." *Id.* (quoting *Ellerin v.

Fairfax Savings*, 337 Md. 216, 232, 652 A.2d 1117, 1125 (1995)). The Maryland Court of Appeals

could not be more explicit in requiring that the knowledge element of deceit be combined with clear and

convincing evidence that the defendant had the deliberate intent to deceive:

An action cannot be supported for telling a bare naked lie, *i.e.*, saying a thing which is false, knowing or not knowing it to be so, and without any design to impose upon or cheat another, and without intention that another should rely upon the false statement and act upon it.

*VF Corp.*, 350 Md. at 704, 715 A.2d at 193 (internal citations omitted). "Thus, as pointed out in several of our decisions, recovery in a tort action for fraud or deceit in Maryland is based upon a defendant's deliberate intent to deceive." *Id.* (quoting *Ellerin*, 337 Md. At 230, 652 A.2d at 1124) (internal quotations omitted). A plaintiff must plead and prove that he or she was entitled to rely on the misrepresentation and that the misrepresentation "substantially induced" his or her action, so that the plaintiff would have acted differently but-for the misrepresentation. *Nails v. S&R, Inc.*, 334 Md. 398, 416-17, 639 A.2d 660, 669 (1994). Because reliance on an immaterial fact is not reasonable, courts analyze the materiality of allegedly fraudulent statements at the pleading stage. *See, e.g.*, *Brodsky v. Hull*, 196 Md. 509, 515-16, 77 A.2d 156, 159 (1950) (explaining that "[a] fact is material if…its existence or nonexistence is a matter to which a reasonable man would attach importance in determining his choice of action in the transaction.").

Plaintiff's deceit claim is premised on three primary allegations: (1) the Deed of Removal and various correspondence misidentified Chase Finance as the Note holder of Plaintiff's mortgage and that the Substitute Trustees were in fact the substitute trustees of Plaintiff's security for her defaulted mortgage obligation (Am. Compl. ¶¶ 188, 193-194); (2) those who signed the Deed of Removal and the Trustee's Deed did not have personal knowledge of the facts (*Id.* ¶¶ 189, 191); and (3) the signatures on the Deed of Removal and the Trustee's Deed were not authentic and were improperly notarized (*Id.* ¶¶ 190, 192). However, the Amended Complaint fails to allege sufficiently that Defendants' representations (assumed to be incorrect for the purposes of this Motion to Dismiss only) were made (1) with the knowledge that they were false or with a reckless disregard for their truth; (2) with the intent

to deceive Plaintiff; (3) resulting in Plaintiff's reasonable reliance on a material fact made in the representation; and (4) subsequently resulting in Plaintiff's action that she would not have taken, but-for the representations.

Plaintiff attempts to get around these fatal deficiencies in her Amended Complaint with conclusory statements such as, "Defendants knew that these representations to the Plaintiff were false." (*See id.* ¶ 195.)   Plaintiff also makes the conclusory (and redundant) statement that "Defendants intentionally made these representations to Plaintiff with the intent to mislead her into believing these representations were true." (*See id.* ¶ 196.)   Without any corroborating allegations, Plaintiff claims she relied on the representations "to her detriment." (*See id.* ¶ 201.)

Plaintiff's allegations are not sufficient to survive a Motion to Dismiss an action for fraud or deceit.   Under the Federal Rules of Civil Procedure, all fraud-based claims must be pleaded with particularity.   *See Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D. Md. 2000) ("The requirements of Rule 9(b) apply to all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud.").   Plaintiff concludes that Defendants knew their representations were false because of her supposition that Defendants earned a profit in the foreclosure and that they were lazy or negligent in tracking down the Note. (*See* Am. Compl. ¶ 195.)   This does not rise to the level of a particular assertion that Defendants knew their representations were false, and Plaintiff does not allege that they were recklessly indifferent to the truth.   Although Plaintiff claims that the representations were material and she reasonably relied on them to her detriment, Plaintiff fails to plead sufficiently *which* representations (if any at all) were material, *what* made them material, and *how* Plaintiff was "substantially induced" into action or inaction as a result of the representations.   An action

for deceit under Maryland law and the pleading standards under Federal Rule of Civil Procedure 9(b) requires much more than the generalized conclusions offered in the Amended Complaint.

The heightened pleading standards for fraud and deceit notwithstanding, the conclusory allegations themselves are insufficient to support a claim for deceit under Maryland law. For example, the alleged misrepresentation that the Deed of Removal did not properly authorize the Substitute Trustees to act on the Note holder's behalf (and therefore the Trustee's Deed was defective) cannot be the basis for a deceit claim.[15] Even more importantly, Plaintiff lacks standing to challenge the Deed of Appointment. "[B]ecause Plaintiff was not a party to the document appointing [the trustee], he lacks standing to challenge the validity of the appointment." *Bennett v. Bank of Am., N.A.*, No. 33:12CV34-HEH, 2012 U.S. Dist. LEXIS 54725, *21 (Apr. 18, 2012). A defaulting mortgagor "certainly has an interest in avoiding foreclosure. But the validity of the assignment does not affect *whether* [a] [b]orrower owes its obligations, but only *to whom* [a] [b]orrower is obligated." *Id.* at 21-22 (emphasis and alterations in original) (internal quotations omitted).

Without a factual foundation for Plaintiff's legal conclusions and without a factual basis for alleging a misrepresentation of a material fact made with the intention of misleading Plaintiff, who but-for the misrepresentation would not have acted to her detriment, the Amended Complaint fails to state a claim for deceit, thus the cause of action for deceit should be dismissed with prejudice.

---

[15]     In *Pham v. Bank of N.Y.* the court considered a trustee's motion to dismiss the plaintiff's claims that the note holder did not properly authorize the trustee to conduct the foreclosure proceedings. *Pham v. Bank of N.Y.*, No. 1:12cv2, 2012 U.S. Dist. LEXIS 51194, at *12 (E.D. Va. Apr. 10, 2012). After acknowledging that the "show me the note" theory has been widely rejected, the court held that "a substitute trustee…should not be required to prove in court that it has the noteholder's authority." *Id.* The Amended Complaint provides no plausible basis for the conclusion that Defendant Friedman did not have authority to act on behalf of Chase Finance in connection with the Deed of Trust.

## **CONCLUSION**

For each of the foregoing reasons, the allegations in the Amended Complaint fail to state claims upon which relief can be granted, and Defendants request that this Court dismiss all stated causes of action with prejudice.

Dated: March 12, 2013

Respectfully submitted,

FRIEDMAN & MACFADYEN, P.A., *et al.*

/s/ J. Jonathan Schraub
J. Jonathan Schraub (Md. Bar No. 02708)
jjschraub@sandsanderson.com
SANDS ANDERSON PC
1497 Chain Bridge Road
Suite 202
McLean, VA  22101
Telephone: (703) 893-3600
Facsimile: (703) 893-8484

*Counsel for Defendants*

30

## CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2013, I served the foregoing MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED CLASS COMPLAINT upon the following via the Court's ECF System:

J. Chapman Petersen (Md. Bar No. 16694)
jpetersen@siplfirm.com
SUROVELL ISAACS PETERSEN & LEVY PLC
4010 University Drive
2nd Floor
Fairfax, VA  22030
Telephone: (703) 251-5400
Facsimile: (703) 591-9285

Dale W. Pittman (admitted *pro hac vice*)
THE LAW OFFICE OF DALE W. PITTMAN, PC
112-A W. Tabb Street
Petersburg, VA  23803
Telephone:  (804) 861-6000
Facsimile:  (804) 861-3368

*Counsel for Plaintiff Ivery Hicks*

/s/ J. Jonathan Schraub
J. Jonathan Schraub
jjschraub@sandsanderson.com
SANDS ANDERSON PC
1497 Chain Bridge Road
Suite 202
McLean, VA  22101
Telephone: (703) 893-3600
Facsimile: (703) 893-8484

*Counsel for Defendants*